UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH EMANUEL,

      Petitioner,

v.                                  CASE NO. 6:12-cv-1482-Orl-31GJK
                                        (6:09-cr-223-Orl-31GJK)

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER

This case is before the Court on the following:

1.      Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by Joseph Emanuel ("Petitioner") (Doc. 1, filed September 27, 2012);

2.      Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by United States of America ("Respondent") (Doc. 11, filed December 20, 2012); and

3.      Reply to Response to Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by Petitioner (Doc. 18, filed January 29, 2013).

In his 28 U.S.C. § 2255 motion, Petitioner raises three claims of ineffective assistance of counsel. Petitioner asserts that counsel was ineffective for: (1) failing to challenge his detention and arrest under the Fourth Amendment; (2) failing to investigate whether the Ocoee Police Department possessed video tapes of his arrest; and (3) stipulating that the vehicle involved in a car jacking had been transported, shipped, and received in interstate commerce and that the banks involved in two robberies were insured by the Federal

Deposit Insurance Corporation ("FDIC") (Doc. 1 at 4-12).

Upon due consideration of the claims in the § 2255 motion and supporting documents, the Government's response, Petitioner's reply, and the criminal court record, Petitioner's claims are denied without an evidentiary hearing.

## I.   Background and Procedural History

On October 29, 2009, this Court returned a six count indictment charging Petitioner and two co-defendants with: (1) taking a motor vehicle by force, violence, and intimidation (count one); (2) using a firearm in furtherance of a crime of violence (count two); (3) using force, violence and intimidation to take currency from the custody of a branch of Washington Mutual Bank (count three); (4) using a firearm during the robbery of a branch of Washington Mutual Bank (count four); (5) using force, violence and intimidation to take currency from the custody of a branch of SunTrust Bank (count five); and (6) using a firearm during the robbery of a branch of SunTrust Bank (count six) (Cr. Doc. 27).[1]

Following a jury trial, Petitioner was found guilty on each count (Cr. Doc. 186).  The Court sentenced Petitioner to concurrent prison terms of sixty months on counts one, three, and five, a consecutive prison term of eighty-four months on count two and consecutive terms of 300 months each for counts three and four for a total of 744 months imprisonment (Cr. Docs. 186, 225).   The Eleventh Circuit Court of Appeals affirmed Petitioner's convictions and sentences (Cr. Doc. 274); *United States v. Emanuel*, 422 Fed. Appx. 760 (11th

---

[1] Hereinafter, docket entries in Criminal Case No. 6:09-cr-223-Orl-31GJK will be cited as "Cr. Doc. _____."

Cir. 2011).

## II.   <u>Standard of Review</u>

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2011).  If a court finds a claim under Section 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*  To obtain this relief on collateral review, however, a petitioner must clear a significantly higher hurdle than would exist on direct appeal.  *See United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

Under Section 2255, unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court shall "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Eleventh Circuit Court of Appeals has explained, "[a] habeas corpus petitioner is entitled to an evidentiary hearing on his claim 'if he alleges facts which, if proven, would entitle him to relief.'" *Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999) (quoting *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)). However, "if the

record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002) (explaining that no evidentiary hearing is needed when a petitioner's claims are affirmatively contradicted by the record or patently frivolous).

### III.    <u>Legal Standards</u>

To prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). These two elements are commonly referred to as the performance and prejudice prongs. *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). If Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 at 689–90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals:

[The test for ineffective assistance of counsel] has nothing to do with what the

4

best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. Strickland encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir.1994).

## IV.   Analysis

### a.   Claim One

Petitioner alleges that trial counsel was ineffective for failing to challenge his detention and arrest under the Fourth Amendment (Doc. 1 at 4).  Specifically, Petitioner asserts that he informed counsel that officers from the Ocoee Police Department had questioned him without probable cause and requested that counsel  investigate whether video from a nearby convenience store showed that his encounter with police was custodial (Doc. 1 at 5-6).  Petitioner also alleges that officers from the Ocoee Police Department lied under oath when they testified that they did not block the sidewalk with their police vehicles upon the initial stop of Petitioner (Doc. 1 at 6-17).

Prior to trial, counsel filed a motion to suppress statements made by Petitioner at the time of his arrest (Cr. Doc. 82 at 2).   In the motion, Petitioner argued that he was

interviewed by police in violation of his *Miranda*[2] rights and that the statements he made were not voluntary (Cr. Doc. 82 at 2-3).[3]  An evidentiary hearing was held on the motion (Cr. Doc. 252).

During the hearing, Ocoee Police Sergeant Brian Satterlee ("Satterlee") testified that he responded to a bank robbery on Ocoee-Apopka Road, and witnesses informed him that three black males had fled the scene. *Id.* At 25-26.  Two of the suspects were apprehended. *Id.*  Satterlee testified that, several hours after the robbery, he was patrolling the area  where a Lexus SUV had been found.  Because the key to the Lexus had been found in the possession of one of the suspects arrested earlier, Satterlee thought that the third suspect might be in the area looking for the car. *Id.* at 27.  When Satterlee passed Petitioner, who fit the general description of the third suspect, he turned his car around to make contact with Petitioner, but Petitioner turned and walked in the opposite direction. *Id.* at 30.  Satterlee pulled his car to the grassy area between the road and the sidewalk to make contact with Petitioner. *Id.* at 31. Satterlee noticed that Petitioner was nervous and jittery when approached and also noticed scratches on Petitioner's arms as if he had been running through brush. *Id.* at 34.  Petitioner, who was wearing work boots and jeans, told Satterlee that he was jogging. *Id.* at 31.  On cross examination, Satterlee admitted that, even though

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody admissible at trial only if prosecution can show that defendant was informed of certain rights prior to questioning).

[3] In the motion, Petitioner did not argue that the police lacked reasonable suspicion to stop and question Petitioner nor did he argue that the police lacked probable cause for his arrest.

Petitioner was not physically restrained, his demeanor, the cuts on his arms, and the fact

that he said he was jogging in jeans and boots several miles from his home, led Satterlee to

feel that Petitioner was not free to leave.  However, Satterlee did not tell Petitioner that he

was not free to leave. *Id.*  at 49, 51.

Officer Duane Hunt ("Hunt") arrived on the scene shortly after Satterlee (Cr. Doc.

252 at 73).  Hunt asked Petitioner identifying questions and asked him what he was doing

in the area. *Id.* at 76.  Petitioner answered that he was looking for a Lexus SUV. *Id.*  Although

he had no specific recollection of doing so, Hunt testified that Petitioner was probably told

to sit on the ground for safety reasons. *Id.* at 78-79.  Hunt testified that Petitioner was not in

custody at the time he was questioned. *Id.* at 87.  He also stated that Satterlee's car did not

block the sidewalk. *Id.* at 84.  Shortly after Hunt questioned Petitioner, Satterlee arrested

him. *Id.* at 88.

The Court determined that Satterlee had reasonable grounds to approach Petitioner

based upon what he knew about the suspect.  The Court also determined:

> The fact that Sergeant Satterlee in his own subjective belief when he walked
> away would not have allowed Mr. Emanuel to leave does not, in my view,
> amount to having taken Mr. Emanuel into custody for *Miranda* purposes,
> because that subjective belief, which also may have been wrong, was never
> communicated to either Hunt or Mr. Emanuel. So Officer Hunt's questions to
> Mr. Emanuel were well within the officer's prerogative at the time and under
> the circumstances.

(Cr. Doc. 252 at 118).  Petitioner does not question the trial court's assessment of his motion

to suppress.  Rather, Petitioner argues in his reply that the police had no probable cause to

stop him and that he "felt threatened during and after the initial stop." (Doc 18 at 6).

Petitioner also argues that trial counsel should have investigated whether video cameras from a nearby convenience store recorded the events surrounding his arrest and should have investigated whether a police vehicle could have fit comfortably between the sidewalk and the roadway without impeding traffic (Doc. 1 at 6-7). Presumably, such video would have impeached the police officers' version of events and shown that the encounter between Petitioner and the police was not consensual. Accordingly, argues Petitioner, counsel should have challenged his allegedly illegal detention under the Fourth Amendment.

The Fourth Amendment protects individuals from unreasonable searches and seizures, and evidence obtained in violation of the Fourth Amendment must be suppressed. U.S. Const. amend. IV; *United States v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991). The failure to file a motion to suppress evidence gained in violation of the Fourth Amendment is properly brought as an ineffective assistance claim on federal collateral review. *Kimmelman v. Morrison*, 477 U.S. 365, 383-91 (1986). Nevertheless, the "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 384 (emphasis in original). Even in light of such failure, a movant must show that the failure equates to deficient representation and actually prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show actual prejudice in this context, Petitioner must show a meritorious Fourth Amendment violation and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman*, 477 U.S. at 375.

The Eleventh Circuit categorizes three types of police and citizen encounters: "(1)

8

police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006). The first type of encounter does not implicate the Fourth Amendment. *Perez*, 443 F.3d at 777.   So long as a defendant feels free to leave or decline to answer questions, police officers may approach a suspect and engage in a consensual encounter without the need to articulate any particular level of suspicion.  *Craig v. Singletary*, 127 F.3d 1030, 1041 (11th Cir. 1997).  The Supreme Court has held that "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual, ask to examine the individual's identification, and request to search his or her luggage — as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434–35 (1991) ("mere police questioning does not constitute a seizure" and "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required") (internal quotations and citations omitted). The ultimate inquiry is whether a persons's freedom of movement was restrained by physical force or by submission to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

With regard to the second category of police-citizen encounters — brief seizures and investigatory detentions — the Fourth Amendment does not prohibit a police officer, "in appropriate circumstances and in an appropriate manner [from] approach[ing] a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio*, 392 U.S. 1, 22 (1968).  That is, law enforcement officers may

seize a suspect for a brief, investigatory *Terry* stop where (1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20, 30.   A court looks to the totality of the circumstances to determine the existence of reasonable suspicion. *United States v. Williams*, 619 F.3d 1269, 1271 (11th Cir. 2010).   "While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quotations omitted).

Finally, police may make a warrantless arrest when they have "probable cause to believe that the suspect has committed an offense and where exigent circumstances exist which make obtaining a warrant imprudent." *Parker v. Allen*, 565 F.3d 1258, 1290 (11th Cir. 2009).   The existence of probable cause is also determined under a totality of the circumstances standard. *Baily v. Board of County Com'rs of Alachua Co.*, 956 F.2d 1112, 1119 (11th Cir. 1992). This standard is met when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). Probable cause requires more than mere suspicion, but it does not require convincing proof and "need not reach the [same] standard of conclusiveness and probability

10

as the facts necessary to support a conviction." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

Petitioner argues that the encounter with Satterlee could not have been consensual because, contrary to Satterlee's testimony at the evidentiary hearing, Satterlee blocked the sidewalk with his patrol car and he felt intimidated by the officers' show of force (Doc. 1-2 at 6-7). Even assuming, *arguendo*, that Satterlee's initial contact with Petitioner did not fit the definition of a consensual encounter, the stop was supported by reasonable suspicion. Officer Satterlee, the first officer on the scene, was in the vicinity of a vehicle associated with the other bank robbery suspects when he saw Petitioner. He knew he was looking for a black male who spoke with a Jamaican accent when he spotted Petitioner and turned his car around. When Petitioner saw Satterlee, he turned and began walking in the opposite direction. When Satterlee approached Petitioner, he noticed cuts and scratches on his arms and, when questioned, Petitioner told Saterlee he was out running, even though he was wearing jeans and work boots. Under the totality of the circumstances, it was not objectively unreasonable for counsel to determine that the police had reasonable suspicion for Petitioner's initial stop and brief detention. Moreover, the questions asked of Petitioner by the police were "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

Petitioner argues that he felt intimidated by the police and did not feel free to leave because Satterlee's car blocked the sidewalk, Satterlee tapped his gun, and Hunt touched his gun holster (Doc. 1-2 at 6-7). Even if everything happened as Petitioner alleges, the

nature of a *Terry* stop includes stopping a suspect from leaving. "[A]n investigatory stop is not an arrest despite the fact that a reasonable person would not believe he was free to leave." *United States v. Blackman*, 66 F.3d 1572, 1576 (11th Cir.1995) (emphasis omitted). Based on the nature of the officers' reasonable suspicion that Petitioner may have been involved in a violent robbery, Officer Hunt was justified in ordering Petitioner to sit on the ground.

Likewise, after Satterlee and Hunt questioned Petitioner, there was sufficient probable cause for his arrest. Petitioner fit the description of the robbery suspect who was described as a black male with short dread locks who spoke with a Jamaican accent (Cr. Doc. 252 at 77). Petitioner told Hunt, who arrive on the scene shortly after Satterlee, that he was looking for a Lexus SUV which Hunt knew to be associated with the other robbery suspects. *Id.*[4] Petitioner was arrested shortly thereafter (Cr. Doc. 252 at 78). It was not objectively unreasonable for counsel to determine that the totality of the circumstances supported probable cause for Petitioner's arrest. *See United States v. Johnson*, 741 F.2d 1338, 1340 n.2 (11th Cir. 1984) (facts established probable cause where suspect fit rough description of robber and was driving car that had been observed leaving scene of crime); *Shriner v. Wainwright*, 715 F.2d 1452, 1454 (11th Cir. 1983) (probable cause existed where police encountered suspect meeting description in police bulletin in both temporal and geographic proximity to the crime scene).

---

[4]Officer Hunt had retrieved a Lexus SUV key from another robbery suspect. The key fit a Lexus SUV found near Petitioner's place of arrest. The Lexus was registered to Carole Kong (Cr. Doc. 252 at 71). Petitioner told Hunt that he was looking for Carole Kong's Lexus. *Id.* at 76.

Because a motion to suppress based upon a Fourth Amendment violation would have lacked merit, counsel's failure to file such a motion neither amounted to deficient performance nor resulted in prejudice. Claim One fails under both prongs of *Strickland* and is denied.

### b.    *Claim Two*

Petitioner alleges that counsel was ineffective for failing to adequately investigate whether a nearby convenience store or the police vehicles involved in his apprehension had video cameras that would have shown "an actual violation of the Fourth Amendment during a (proper) suppression hearing." (Doc. 1 at 9).   Although there was testimony at Petitioner's evidentiary hearing that no police video was taken of his arrest, Petitioner refers to a letter received from the records technician of the Ocoee Police Department (Doc. 1-2 at 41).   The letter, sent in response to Petitioner's public records request, stated: "Reference your request for audio and video tapes, those have been disposed of.   Per records law, we are only required to keep these for a maximum of 30 days." *Id.*[5]   Petitioner argues that, had counsel timely requested the video evidence, he would have been able to impeach the testimony of the Ocoee police officers at his suppression hearing (Doc. 1 at 10).

There is no evidence to show that, even if they existed, the convenience store video

---

[5]The Government argues that "the Ocoee Police Department merely issued a form response about their policy with regard to retaining copies of audio and video tapes.   The Ocoee Police Department's response is certainly not an admission that it destroyed audio or video tapes of the traffic stop that Emanuel complains of.   Further, a review of the investigative file does not indicate that the United States ever received any audio or video tape of [Satterlee's] stop of Emanuel." (Doc. 11 at 17).   Petitioner argues that other police vehicles on the scene may have made video tapes of his arrest, but that counsel did not seek to obtain those tapes (Doc. 18 at 9).

tapes would have exonerated Petitioner or provided an alibi for the SunTrust robbery. Petitioner was arrested several hours after the robbery, and by his own admission, Petitioner entered the store only moments before he was questioned by Satterlee (Doc. 1-2 at 4-7). Moreover, testimony at the suppression hearing indicated that no police video of Petitioner's arrest had existed (Cr. Doc. 252 at 56). To the extent Petitioner now argues that the police tapes would have shown that Satterlee's car blocked the sidewalk or that he was otherwise detained, such a finding would be irrelevant. As discussed in Claim One, Satterlee had reasonable suspicion to stop and question Petitioner and the stop matured into an arrest after the development of probable cause. Accordingly, the police officers' actions did not violate the Fourth Amendment. Petitioner cannot demonstrate prejudice from counsel's failure to obtain video evidence of Petitioner's arrest. Claim Two is denied.

### c. Claim Three

Petitioner alleges that counsel was ineffective for stipulating that the car used during the commission of the crimes charged in the indictment had been transported, shipped and received in interstate commerce and that the banks Petitioner was convicted of robbing were insured by the FDIC (Doc. 1 at 11). Petitioner alleges that he was prejudiced by the stipulations because they allowed the jury to question why Petitioner agreed to the stipulations if he was innocent. *Id.*

As an element of the offense of car-jacking, the Government needed to prove that the vehicle involved in the car-jacking offense had been transported, shipped, or received in interstate or foreign commerce. *See* 18 U.S.C. § 2119. At trial, counsel stipulated that the

14

subject car had been transported, shipped, and received in interstate commerce (Cr. Doc. 257 at 201).   Simply acknowledging that the car used during the robberies was manufactured in one state and ended up in Florida, thus constituting interstate commerce, does not amount to an acknowledgment that Petitioner was involved with the car-jacking or in the commission of the robberies.  Petitioner does not allege that the car was not manufactured outside of Florida, nor does he allege that the Government would have been unable to prove this element of the offense.

Likewise, as an element of the offense of bank robbery under 18 U.S.C. § 2113, the Government had the burden to prove at Petitioner's trial that he robbed an institution covered by the statute. *See* 18 U.S.C. § 2113(a).  Title 18 U.S.C. § 2113(f) defines a "bank" as one insured by the FDIC.  At trial, counsel stipulated that the deposits of the SunTrust Bank and the Washington Mutual Bank were FDIC insured (Cr. Doc. 255 at 144; Cr. Doc. 254 at 177 ).  Petitioner has not alleged that the institutions he was accused of robbing were not FDIC insured or that the Government would have been unable to prove that the institutions were FDIC insured.   As Petitioner has not shown that the results on any of the counts would have been different but for counsel's stipulations, Claim Three fails on *Strickland's* prejudice prong.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1.    Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant

to 28 U.S.C. § 2255 (Doc. 1) is **DENIED**.

    2.   The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

    3.   The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:09-cr-223-Orl-31GJK and to terminate the motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. 295) pending in that case.

    4.   This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a Certificate of Appealability is **DENIED** in this case.

    **DONE AND ORDERED** in Orlando, Florida, this 11th day of March, 2013.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-4 2/26
Joseph Emanuel
Counsel of Record